**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LUCILLE B., | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| MARTIN O'MALLEY,[1] | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant | : | NO. 24-375 |

## MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                October 31, 2024

Lucille B. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Social

Security Administration Commissioner's ("the Commissioner") final decision, denying her claim

for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  Plaintiff filed

a brief supporting her request for review, the Commissioner responded to it, and Plaintiff has filed

a reply brief.  For the reasons set forth below, Plaintiff's Request for Review will be granted, and

Judgment will be entered in Plaintiff's favor and against Defendant.

## I.        PROCEDURAL HISTORY[2]

On March 6, 2015, Plaintiff applied for DIB, alleging disability beginning on that same

date, due to attention deficit hyperactivity disorder ("ADHD"), depression, carpal tunnel syndrome

("CTS"), fibromyalgia, memory loss, disc herniation, dextroscoliosis, temporomandibular joint

dysfunction, diverticulosis, and gastrointestinal reflux disorder ("GERD").  R. at 11, 200-03.  The

---

[1]  Martin O'Malley became Commissioner of the Social Security Administration on December 20, 2023.  Pursuant to Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted as Defendant in this suit.  Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this suit.

[2]  This court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."), Defendant's Response to Request for Review of Plaintiff ("Def.'s Resp."), Plaintiff's Reply Brief ("Pl.'s Reply"), and the administrative record.

Social Security Administration ("SSA") initially denied Plaintiff's claim, on July 13, 2015, R. at 11, so Plaintiff requested a hearing. *Id.* at 11, 164. On October 17, 2017, Plaintiff appeared before Administrative Law Judge ("ALJ") Christine McCafferty, *id.* at 675, who determined that Plaintiff had not been under a disability from March 6, 2015, through November 7, 2017, the date of her decision. *Id.* at 25, 120-140. The Appeals Council ("the AC") denied Plaintiff's request for review, on April 5, 2019, making ALJ McCafferty's findings the Commissioner's final determination. *Id.* at 1416. Plaintiff sought review of that decision from this court on May 30, 2019, including a claim that ALJ McCafferty was not properly appointed under the Constitution's Appointments Clause. *Id.* at 663-66. United States Magistrate Judge Linda K. Caracappa remanded the case on February 26, 2020, pursuant to this circuit's decision in *Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020). *Id.* On July 7, 2020, the AC vacated the Commissioner's final decision and remanded the case for the ALJ to conduct further proceedings consistent with Judge Caracappa's order. *Id.* at 669-70.

On November 16, 2020, due to COVID-19 precautions, Plaintiff appeared telephonically before ALJ Marc Silverman, who considered Plaintiff's consolidated claims. *Id.* at 607. Plaintiff, represented by an attorney, and vocational expert ("VE") Agnes Klosinski Gallen, testified at the hearing. *Id.* On February 3, 2021, ALJ Silverman issued a partially favorable decision; he determined that Plaintiff was not disabled prior to July 12, 2019, but became disabled on that date, and continued to be disabled through February 3, 2021, the date of his decision. *Id.* at 590, 1425, 1444. Plaintiff sought judicial review of that decision from this court on May 19, 2021. On November 22, 2021, the Commissioner filed a motion to remand, which United States Magistrate Judge Richard A. Lloret granted. *Id.* at 1455.

On May 23, 2022, the AC entered an order affirming ALJ Silverman's finding that Plaintiff

was disabled beginning July 12, 2019, vacating his decision only concerning the issue of disability prior to that date, and remanding the case for further evaluation and a new decision. *Id.* at 1462-63. On July 7, 2023, Plaintiff appeared, by video teleconference, before ALJ Silverman for an administrative hearing. *Id.* at 1400. Plaintiff, represented by an attorney, and VE Brian Bierley, testified at the hearing. *Id.* On September 27, 2023, ALJ Silverman, using the sequential evaluation process ("SEP') for disability,[3] issued an unfavorable decision. *Id.* at 1389. His decision determined that Plaintiff was not disabled, from March 6, 2015, through July 11, 2019. *Id.* Plaintiff sought judicial review of that determination from this court on January 25, 2024. Both parties consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

## II.   FACTUAL BACKGROUND

A.   Plaintiff's Personal History

Plaintiff, born on July 13, 1964, was 54 years old on July 12, 2019, the date on which the ALJ determined she became disabled. R. at 590, 1388-89. She resides with her husband, mother, and two adult children. *Id.* at 624.

---

[3] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 404.1520(b).

2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 404.1520(c).

3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 404.1520(d).

4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 404.1520(f).

5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled. *See* 20 C.F.R. § 404.1520(g).

B.      Plaintiff's Testimony

At the November 16, 2020 hearing,[4] Plaintiff testified regarding limitations that she alleges result from physical impairments and prevent full-time employment.  Plaintiff testified that she worked approximately five hours a week in her family's business as its secretary/treasurer.[5]  R. at 615.  However, she never worked full-time for the business.  *Id.* at 616.  Plaintiff discussed her other duties for the business, which included lifting dog food and dogs, that weigh between 25-30 pounds.  *Id.*

Plaintiff testified that physically, it is too painful for her to work.  *Id.* at 619.  Her whole body is now "very, very weak," she frequently drops objects; her back issues prevent overhead lifting.  *Id.* She frequently drops objects, because she has a hard time gripping them.  *Id.* at 620, 623-24.  Going up and down the steps is painful for her knees, back, neck, and shoulders.  *Id.* at 620.  Her back pain means that she can no longer lift dogs or dog food.  *Id.*  The pain in her neck, hands, wrists, and back makes using a computer and keyboard very difficult.  *Id.* at 625.  Plaintiff testified that, since 2015, these conditions, have prevented her from walking more than fifteen to twenty minutes before requiring a break.  *Id.* at 623.  She cannot sit for more than ten minutes before her back and knees become painful.  *Id.*  Pain injections, physical therapy, and surgeries on her wrists and knee have not had any lasting results in reducing her pain.  *Id.* at 620-21.

Mentally, Plaintiff testified that she cannot "think straight."  *Id.* at 619.  Plaintiff elaborated that her inability to focus and concentrate prevented her from making the deposits for the family business.  *Id.* at 620.  She has been diagnosed with several mental health impairments, including Attention Deficit Disorder ("ADD"), anxiety, and depression.  *Id.* at 621.  Plaintiff is taking

---

[4]  The court discusses this hearing, in particular, because it is when Plaintiff provided the majority of her testimony.
[5]  Plaintiff testified that Brink's Services, Inc. is a "doggy daycare, boarding, pet taxi, pet sitting, and dog walking" business.  R. at 615.

medications for her impairments that make her tired.[6]  *Id.* at 622.

Plaintiff testified that she cannot do household chores such as cooking, cleaning, and grocery shopping.  *Id.* at 625.  She requires assistance with her hygiene, showering, and dressing. *Id.*

Plaintiff has been diagnosed with incontinence and must wear a pad that requires frequent changing.  *Id.* at 621.  Her anemia diagnosis leaves her exhausted, and she has difficulty keeping her eyes open throughout the day.  *Id.* at 625.

C.    Vocational Expert's Testimony

At the November 16, 2020 administrative hearing, VE Agnes Klosinski Gallen characterized Plaintiff's past work as an animal caretaker, a semi-skilled[7] job performed at the medium[8] level of exertion.  R. at 627.

ALJ Silverman's hypothetical scenario asked VE Gallen to consider an individual of Plaintiff's age, education, and past work experience, limited to light[9] work, with the following abilities and limitations:

> no more than frequent repetitive reaching, fingering, and handling.
> And limited to simple, routine tasks, with only occasional changes
> in a work setting.

---

[6]  Plaintiff specifically mentioned the medication Amitriptyline.  *Id.* at 622.

[7]  "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hand or feet may be moved quickly to do repetitive tasks."  20 C.F.R. § 404.1568(b).

[8]  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

[9]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

*Id.* VE Gallen replied that, given these restrictions, the hypothetical individual could not perform the past work described. *Id.*

At the July 17, 2023 administrative hearing, ALJ Silverman adopted VE Gallen's testimony solely to Plaintiff's past work as an animal caretaker. R. at 1406. He then asked VE Brian Bierley to consider a hypothetical individual of Plaintiff's age, education, and past work experience, limited to light work, with the following abilities and limitations:

> no more than frequent repetitive reaching, fingering, and handling. Limited to simple tasks in a routine work environment, and limited to low stress work, which is defined as routine work with no more than occasional changes in the work.

*Id.* at 1408. VE Bierley replied that the hypothetical individual could perform the following light and unskilled[10] jobs: (1) machine feeder, 33,000 positions nationally; (2) line attendant, 36,000 positions nationally; and (3) press tender, 32,000 positions nationally.[11] *Id.* at 1409-10.

### III.   THE ALJ'S FINDINGS

In his decision, the ALJ issued the following findings:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2024.

2. [Plaintiff] has not engaged in substantial gainful activity since March 6, 2015, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. [Plaintiff] has the following severe impairments: right shoulder bursitis; fibromyalgia; bilateral carpal tunnel syndrome; status post bilateral carpal tunnel release; degenerative disc disease of the cervical and lumbar spine;

---

[10] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a).

[11] The court notes that the VE identified these full-time jobs based on the 2021 job incidence rate. R. at 1413.

and attention deficit hyperactivity disorder (20 CFR 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no more than frequent, repetitive reaching, fingering, and handling; limited to simple tasks in a routine work environment; and limited to low stress work, which is defined as routine work with no more than occasional changes in the work.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).

7. [Plaintiff] was born on July 13, 1964, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date and was 54 years old on July 11, 2019 (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed (20 CFR 404.1569 and 404.1569a).

11. [Plaintiff] was not under a disability, as defined in the Social Security Act, from March 6, 2015, through the July 11, 2019 (20 CFR 404.1520(g)).

R. at 1378, 1380, 1383, 1387-89.

## IV.   DISCUSSION

### A.   Standard of Review

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed if substantial evidence supports them.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance.  *Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

Overall, this test is deferential to the ALJ.  *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  The court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo*, might have reached a different conclusion.  *Id.*  Indeed, the court may not undertake a *de novo* review of the Commissioner's decision by reweighing the record evidence itself.  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Monsour Med. Ctr.*, 806 F.2d at 1190-91.  Nor is the court permitted to "impose [its] own factual determinations."  *Chandler*, 667 F.3d at 359; *see Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder.").  By contrast, the Commissioner's legal conclusions are subject to *de novo* review.  *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at

431.

B.     Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that he cannot engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  Plaintiff may establish a disability through: (1) medical evidence meeting one or more serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments.  *Heckler*, 461 U.S. at 460.  Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents a return to their past employment. *See Brown*, 845 F.2d at 1214.  If Plaintiff proves that the impairment results in functional limitations to performing their past relevant work, then the burden of proof shifts to the Commissioner to prove that work exists in the national economy, which Plaintiff can perform given their age, education, work experience, and residual functional capacity.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.     Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that during the closed period, although Plaintiff could not perform her past relevant work, R. at 1387, she could perform other work in the national economy, that existed in significant numbers.  R. at 1388.  Appropriate

jobs included those identified by the VE: (1) machine feeder, (2) line attendant, and (3) press tender. *Id.* at 1409-10. The ALJ concluded that, based on Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), she was not disabled from March 6, 2015, through July 11, 2019. *Id.* at 1389.

Plaintiff disputes the ALJ's decision and argues that the ALJ reversibly erred by: (1) failing to evaluate the opinions of her treating sources properly; 2) failing to mention her medically determinable knee impairments or consider the functional limitations therefrom; and (3) failing to incorporate limitations that he found to exist in the RFC. Pl.'s Br. at 4. Plaintiff finally argues that she is entitled to an award of benefits. *Id.* The Commissioner denies Plaintiff's assertions. Def.'s Resp. at 6, 8, 15, 18. This court finds that Plaintiff's first and fourth claims are meritorious. Therefore, this court will remand for the Commissioner to calculate an award of benefits.

1. The ALJ Erred in His Analysis of the Opinion Evidence Provided by Plaintiff's Treating Physicians

Plaintiff argues that the ALJ committed legal error in evaluating the opinion evidence of her treating physicians. Pl.'s Br. at 4. The Commissioner counters that the ALJ correctly evaluated the medical opinions in accordance with the regulations. Def.'s Resp. at 4, 6. This court finds that the ALJ erred.

Plaintiff challenges the ALJ's assessment of her treating physicians, Drs. Graham and Solis. Pl's Br. at 5. Her DIB application was filed on March 6, 2015, so the pre-2017 regulations apply. Under the applicable regulations, a treating physician's medical opinion is expected to be afforded more weight than the medical opinion of a state doctor, however, the ALJ may assign greater weight to the latter so long as he explains why he did so. *See Chandler*, 667 F.3d at 361. A treating physician's "opinion may be afforded 'more or less weight depending upon the extent to which supporting explanations are provided.'" *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d

352, 355 (3d Cir. 2008) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). Furthermore, under the relevant pre-2017 regulations and rulings, a treating source's medical opinion regarding the nature and severity of an individual's impairments was entitled to controlling weight, if that finding was well-supported and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); S.S.R. 96- 2p, 1996 SSR LEXIS 9, at *1 (July 2, 1996). A treating source's medical opinion is well-supported if it relies on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(c)(2). However, it is unnecessary for it to be "fully supported by such evidence." S.S.R. 96- 2p, 1996 SSR LEXIS 9, at *5. These same regulations "require[] that the adjudicator will always give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s) . . . ." S.S.R. 96-2p, 1996 SSR LEXIS 9, at *11.

Plaintiff's treating physician, Dr. Graham, completed a Medical Source Statement in April 2015 stating that Plaintiff had marked limitations in the ability to perform activities of daily living and maintaining social functioning. R. at 337-38. Furthermore, he opined that she had extreme limitations in maintaining concentration, persistence, and pace. *Id.* at 338. He limited Plaintiff to standing and walking for no more than two hours, sitting for no more than three hours in an eight-hour workday, and lifting no more than ten pounds. *Id.* at 337-42. He assessed that Plaintiff had significant limitations with reaching, handling, and fingering and that her symptoms rendered her incapable of even low-stress jobs. In January 2017, he completed another Medical Source Statement in which he indicated that "all of her diagnoses are lifelong and chronic in nature." *Id.* at 439. Dr. Graham opined that Plaintiff had marked limitations in two areas: (1) her ability to perform activities of daily living; and (2) maintaining social functioning. *Id.* at 337-38. He opined that she had extreme limitations in maintaining concentration, persistence, or pace. *Id.* Dr.

Graham further opined that Plaintiff would likely miss more than four days of work per month due to her symptoms. *Id.* at 338.

Dr. Solis, also one of Plaintiff's treating physicians, provided a Medical Source Statement in May 2015. As a result of herniated discs in the cervical and lumbar spine, Dr. Solis advised Plaintiff never to lift more than five pounds. *Id.* at 354. Similar to Dr. Graham, Dr. Solis opined that Plaintiff would be limited to sitting, standing or walking for no more than two hours; never performing any postural maneuvers; and only occasionally using her hands and arms. *Id.* at 354-60.

The ALJ stated that he gave deference to Drs. Graham and Solis' longitudinal treatment and examining relationship with Plaintiff. *Id.* at 1386. He notes that both doctors provided several opinions, in 2013, 2015, and 2017, that "suggested physical limitations that would preclude [Plaintiff] from working at any level of exertion on a regular or continuous basis." *Id.* However, he gave the opinions little weight because he determined they were neither supported by relevant evidence nor consistent with the record as a whole. *Id.* The ALJ gave greater weight to the state agency consultants, Drs. Maravellie and Brentzel's opinions, even though these doctors neither specialize in continuing care nor have established a treating or examining relationship with Plaintiff. *Id.*

An ALJ must consider all relevant, probative evidence contained in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994). Furthermore, an ALJ may not mischaracterize or overlook evidence. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). These principles are particularly important as applied to both Drs. Graham and Solis because they are Plaintiff's treating physicians, hence, their opinions are entitled to "great," not "little" weight. *See Brownawell*, 554 F.3d at 355. Furthermore, under the Commissioner's regulations, the opinions of treating medical sources are

often afforded controlling weight when they are well-supported and not inconsistent with other substantial evidence in the record.[12]  *See* 20 C.F.R. §§ 404.1527(c)(2); 404.1527(d)(2).  Moreover, even if the opinions of treating sources are not afforded controlling weight, they will often be afforded more weight than any other opinion; hence, they will be adopted.  S.S.R. 96-2p, 1996 SSR LEXIS 9.

The ALJ did not provide an adequate explanation as to why the treating source's opinions were not entitled to greater weight, particularly in relation to the great weight he assigned to the opinions of the state agency consultants, who only examined Plaintiff once.  Under the binding precedent of this Circuit prior to 2017, "it is improper for an ALJ to credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with testimony of the claimant's treating physician."  *Brownawell*, 554 F.3d at 357 (quoting *Dorf v. Bowen*, 794 F.2d 896, 901 (3d Cir. 1986)).   Furthermore, the ALJ here does not sufficiently identify what other substantial medical evidence the treating sources' opinions were inconsistent with.  At most, he states that the treating sources' opinions contradict Plaintiff's hearing testimony about her daily activities and greeting customers at the business.  R. at 1386.  However, "[a] single piece of evidence is not substantial if the Commissioner failed to resolve a conflict created by countervailing evidence or if it is overwhelmed by other evidence—particularly that offered by a treating physician."  *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (citations omitted).  In short, the ALJ erred in that he did not have sufficient reason to favor the non-treating physicians over the treating physicians, hence, he was required to adopt the opinions of the treating physicians.

---

[12]  The court notes that the opinions at issue here were consistent with each other and other medical evidence in the record, such as the primary source statement provided by another treating source in June 2023, Jillian Wawrzyniak, M.D.  R. at 1566-69.

2. <u>The ALJ Properly Accounted for Plaintiff's Mental Limitations When Determining Her RFC</u>

Plaintiff argues that the ALJ failed to incorporate limitations in her RFC that he found to exist. Pl.'s Br. at 4. Specifically, Plaintiff alleges that the RFC did not account for the ALJ's finding that Plaintiff had moderate limitations in concentration, persistence, or pace under the paragraph B criteria of the mental listings at step three. *Id.* at 19-22. The Commissioner argues that the claim is meritless. Def.'s Resp. at 18. This court finds that the ALJ conducted a proper step three analysis, and Plaintiff's RFC accounted for her mental limitations.

At step three of the sequential evaluation process, the ALJ considers whether a claimant has an impairment that meets or equals any listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii). Under the paragraph B criteria of the listings for mental impairments, a claimant's functioning is evaluated in four areas, including, as relevant here, the ability to concentrate, persist, or maintain pace. 20 C.F.R. pt. 404, subpt. P, §12.00A(2)(b). Prior to step four, where the ALJ determines whether the claimant can perform his past work, the ALJ assesses a claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv). An RFC is the most that a claimant can still do despite her limitations. *See* 20 C.F.R. § 404.1545(a). The ALJ assesses the RFC by considering all the relevant medical and other evidence in the record. 20 C.F.R. § 404.1545(a)(3).

An ALJ's step three analysis is proper when the "decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that" a claimant does not meet the requirements for any listing. *Jones v. Barnhart*, 364 F.3d 501, 504-05 (3d Cir. 2004). An ALJ is required to explain why a claimant does not meet or medically equal a listed impairment. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000). Simply stating the conclusion that the claimant does not meet or equal the relevant listing is inadequate and requires a remand. *Id.* at 120. This court is not empowered to search the record and try to correct the ALJ's

failure; the court is only permitted to consider the explanations the ALJ provided to justify her decision. *Fargnoli*, 247 F.3d at 44 n.7 (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80 (1943)).

Here, at step three, the ALJ evaluated Plaintiff's ADHD under listing 12.11. R. at 1381. Under the four areas of functioning of the paragraph B criteria, the ALJ found that Plaintiff had moderate limitations in concentration, persistence, or pace. *Id.* at 1382. The ALJ recognized that Plaintiff alleged limitations in concentrating, focusing, following instructions, and completing tasks. *Id.* The ALJ noted, however, that Plaintiff also reported having the abilities for tasks that require some concentration, persistence, or pace, such as performing household chores, managing her medical appointments, and outsourcing business accounting *Id.* The ALJ also explained that despite her average reasoning, concentration, and processing abilities, Plaintiff had a history of inattention related to ADHD, and her primary care physician, Dr. Solis, had described her as having difficulty with focus and concentration. *Id.* The ALJ concluded, therefore, that Plaintiff had moderate limitations in continued concentration, persistence, or pace (under the paragraph B criteria of the listings at step three), but also a fair ability to focus attention on work activities and stay on task at a sustained pace. *Id.* Thus, the ALJ accounted for Plaintiff's moderate limitations in concentration, persistence, or pace under the paragraph B criteria of the mental listings by assessing a mental RFC restricted to simple tasks in a routine work environment and low-stress work, which was defined as routine work with no more than occasional changes. *Id.* at 1383. This court finds that the ALJ adequately explained how he accounted for Plaintiff's mental limitations when determining her RFC.

### 3. The ALJ Did Not Commit Reversible Error by Failing to Consider One of Plaintiff's Diagnosed Knee Disorders Explicitly

Plaintiff argues that the ALJ erred when he failed to mention her medially determinable knee impairments or consider the functional limitations therefrom. Pl.'s Br. at 4. The

Commissioner counters that the ALJ did not commit reversible error.  Def.'s Resp. at 15-18.  This court finds that the ALJ assessed the functional limitations of Plaintiff's knee impairment, and he did not err by failing to mention one of the diagnosed knee disorders explicitly.

The ALJ did not address Plaintiff's diagnosis of patellofemoral disorder of the knee (also referred to as patellofemoral pain syndrome or "PFPS"), by Dr. Solis in August 2017.  Pl.'s Br. at 18 (citing R. at 90-92).  The ALJ, however, addressed Plaintiff's history of bilateral patella chondromalacia at step two, and determined the associated symptoms improved after arthroscopic debridement in October 2018.  R. at 1379.  He found "no significant objective medical findings thereafter that would support more than minimal limitations on [Plaintiff]'s ability to perform work activities."  *Id.*  The ALJ, therefore, concluded that it was not a severe impairment because it did not cause more than a minimal limitation in her ability to perform basic work activities.  *Id.*

Chondromalacia and PFPS are two closely related knee disorders, collectively and commonly known as "runner's knee," but with different treatments.[13]  Remand is not required based on the ALJ's failure to explicitly identify PFPS because the ALJ, as noted, did consider Plaintiff's functional limitations stemming from her other diagnosed knee disorder.  So long as the ALJ's decision identifies the functional limitations of Plaintiff's diagnosis, he need not identify the specific diagnosis.  *See Smikle v. Colvin*, No. 3:15-CV-2340, 2016 U.S. Dist. LEXIS 79009, at *42 (M.D. Pa. June 17, 2016) (citing *Alexander v. Shalala*, 927 F. Supp. 785, 792 (D.N.J. 1995), *aff'd*, 85 F.3d 611 (3d Cir. 1996)) (holding that the ALJ's failure to identify a depressive diagnosis entirely is not reversible error because "the outcome of a case depends on the

---

[13] *Chondromalacia Patellae*, *Physiopedia*, (Sept. 30, 2024, 2:56 PM) "Chondromalacia patella is not considered to be under the umbrella term of PFPS [patellofemoral pain syndrome].  The pathophysiology is different and therefore there is an alternative treatment."
https://www.physiopedia.com/Chondromalacia_Patellae#:~:text=Chondromalacia%20patella%20is%20not%20cons idered,syndrome%20will%20have%20chondromalacia%20patella.

demonstration of functional limitations rather than a diagnosis . . . .").

Furthermore, an ALJ's failure to correctly identify a particular impairment as severe at step two is not reversible error where, the overall step two conclusion is in Plaintiff's favor, and the ALJ continues to step three. *See Cox v. Colvin*, No. 15-1768, 2017 U.S. Dist. LEXIS 13857, at *11-12 (E.D. Pa. Jan. 31, 2017) *report and recommendation approved and adopted*, 2017 U.S. Dist. LEXIS 98449 (E.D. Pa. June 26, 2017) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007)) (finding no reversible error when the ALJ did not find the plaintiff's neck pain and right hip pain were severe impairments at step two but proceeded to step three based on other severe impairments). Here, though the ALJ did not identify Plaintiff's knee impairment as severe, he found that Plaintiff had other severe impairments and continued his analysis of Plaintiff's claim through step four. Accordingly, because the ALJ proceeded in the sequential analysis based on other impairments, his failure to classify Plaintiff's knee impairment as severe, even if erroneous, does not warrant remand. *See Wood v. Saul*, No. 18-1944, 2019 U.S. Dist. LEXIS 126225, at *2-3 (E.D. Pa. July 29, 2019).

        4.  <u>Plaintiff is Entitled to an Award of Benefits by this Court</u>

Plaintiff alleges that she is entitled to an award of benefits, because there has been an excessive delay in adjudicating her claim, and because the ALJ repeated the same errors on remand. Pl.'s Br. at 22-25. The Commissioner rejects Plaintiff's allegation and states that if this court finds error, the proper remedy is remand for further administrative action. Def.'s Resp. at 21. This court finds that an award of benefits, and remand for a speedy calculation of benefits to which Plaintiff is entitled from the onset date of March 6, 2015, to July 11, 2019, is warranted.

Pursuant to the fourth sentence of 42 U.S.C. § 405(g): "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the

decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  Under this authority, a reviewing court, in its sound discretion, may remand for further proceedings or an award of benefits directly.  *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 390 (M.D. Pa. 2019) (citing *Brownawell*, 554 F.3d at 357-58).  In making this determination, the court is guided by the consideration of whether there has been an excessive delay in the litigation of the claim, which is not attributable to Plaintiff.  *See Friedberg v. Saul*, 439 F. Supp. 3d 402, 403 (E.D. Pa. 2020).  It also considers whether the administrative record of the case has been fully developed and whether substantial evidence on the record indicates that Plaintiff is disabled and entitled to benefits.  *Id.*  "When faced with such cases [meeting the above criteria], it is unreasonable for a court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would result only in further delay in the receipt of benefits."  *Podedworny*, 745 F.2d at 222.

Courts have found that administrative delays of five years or more in cases involving one or more appeals and/or remands have constituted excessive delay, thereby triggering consideration of an award of benefits in lieu of a remand.  *See e.g.*, *Brownawell*, 554 F.3d at 358 (eight years delay, and two prior remands, benefits awarded); *Morales*, 225 F.3d at 320 (award of benefits ordered after ten years and two appeals); *Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1162 (3d Cir. 1988) (eight years of administrative and judicial proceedings, benefits awarded).  The Commissioner does not dispute that this matter has been subject to an excessive delay not attributable to Plaintiff.  Plaintiff filed her application for benefits more than nine years ago.  Since then, there have been three ALJ decisions, two federal court remands, and now three federal court appeals.  Accordingly, there is no question that the first factor has been established.

*See Podedworny*, 745 F.2d at 223 (finding excessive delay after five years and two appeals).

However, an "award of benefits should be made only when the administrative record of the case has been fully developed and . . . substantial evidence on the record as a whole indicates that the claimant is entitled to benefits. *Id.* at 221-22 (citations omitted). Substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted). This standard is "less than a preponderance of the evidence but more than a mere scintilla." *Jones*, 364 F.3d at 503 (citations omitted).

In this case, it is clear that the record has been fully developed in all relevant respects, and there is no indication of any missing evidence. Furthermore, substantial evidence indicates that Plaintiff is disabled. The ALJ determined that Plaintiff has "the following severe impairments: right shoulder bursitis; fibromyalgia; bilateral carpal tunnel syndrome; status post bilateral carpal tunnel release; degenerative disc disease of the cervical and lumbar spine; and attention deficit hyperactivity disorder." R. at 1378. In addition, there is substantial evidence in the record that Plaintiff's impairments render her unable to engage in substantial gainful activity. *See supra* Section IV(C)(1). Considering the extensive delay, the fully developed record, and the substantial evidence indicating that Plaintiff is disabled, an award of benefits is the appropriate relief under these circumstances.

## V.   CONCLUSION

This court finds that the ALJ erred in assessing Plaintiff's treating sources.  Furthermore, due to the extensive delay, the fully developed record, and substantial evidence indicating that Plaintiff is disabled, an award of benefits is warranted.  Plaintiff's Request for Review is, therefore, granted.  The case is remanded solely for the purpose of calculating benefits to which Plaintiff is entitled from the onset date of March 6, 2015, to July 11, 2019.  An implementing Order and Order of Judgment follow.